106 F.3d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,
v.
S. Jay GOLDINGER; Bert R. Cohen; Andrew E. Gerald; Harvey
M. Rosen; Ronald A. Weinstein, Defendants-Appellees.
 No. 95-56092.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1996.
Decided Jan. 14, 1997.
 
 Before: GOODWIN, WIGGINS, NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants are accused of illegally trading Thrifty Corporation stock based on misappropriated information. The district court granted summary judgment for Defendants, finding the SEC produced insufficient evidence of an improper disclosure. The SEC appeals. It also appeals an earlier denial of partial summary judgment that the relevant information was non-public. This court has jurisdiction under 28 U.S.C. § 1291. We AFFIRM.
 
 
 3
 The general events surrounding this action involve the merger discussions between Pacific Lighting and Thrifty Corporation. On May 19, 1986, Pacific discussed with Thrifty chairman Leonard Straus a proposal to purchase Thrifty stock in order to merge Thrifty into a subsidiary. Pacific would bid on Thrifty only if it could be assured of acquiring at least 51% of Thrifty stock. Straus agreed to propose to his major shareholders that they sign over to Pacific an option to buy their shares. The major shareholders included both Thrifty insiders and others such as Mr. and Ms. Guild.
 
 
 4
 On May 26, 1986, the major shareholders met at Straus's home to hear Pacific's takeover proposal. Straus says he warned them that the proposal was confidential, although the Guilds do not remember any warning. The proposal documents were not marked "confidential." At that meeting, the Guilds and all but one of the other shareholders signed a proposed option agreement. The option agreements gave Pacific the option to purchase their shares at a set price, but a final merger agreement was not completed.
 
 
 5
 On May 27, 1996, the price of Thrifty stock rose on increasingly heavy trading, with rumors circulating about a possible merger. After the New York Stock Exchange briefly halted trading in Thrifty stock, Thrifty announced it was negotiating a merger with an unidentified public company (the "Negotiation Announcement"). Its stock price went from $33.50 immediately before the announcement to $35 afterwards, and continued to rise to $37.50. On May 28, Pacific and Thrifty jointly announced their merger agreement.
 
 
 6
 The SEC filed this action against defendants S. Jay Goldinger, Bert Cohen, Andrew Gerald, Harvey Rosen, and Ronald Weinstein. Defendants are accused of making greater than $550,000 for themselves and their clients by trading in Thrifty stock before the merger announcement.
 
 
 7
 The Defendants' involvement began on May 27, when Ms. Guild called Goldinger. In that phone conversation, Guild told Goldinger about the potential Pacific merger so that he would be ready to give her financial advice during their previously scheduled meeting later that day.
 
 
 8
 Between the phone conversation and the meeting, Goldinger stopped Cohen in the hallway to ask if Cohen knew "anything about Thrifty," saying he "had a client coming in." Cohen replied that he did not know anything. The SEC alleges, and Defendants deny, that Goldinger also told Cohen about the potential merger.
 
 
 9
 Cohen admits that Goldinger's statement piqued his interest in Thrifty. Cohen asked defendant Gerald about Thrifty, and he learned of the heavy trading in the previous week. Within twenty-four minutes of Goldinger's phone conversation with Ms. Guild, Cohen placed an order to buy Thrifty stock.
 
 
 10
 Cohen investigated Thrifty stock further, and he read a Wall Street Transcript article that speculated Thrifty might be part of a merger. Gerald then overheard Goldinger tell Cohen that the Thrifty put options were "way" overpriced (meaning the price of the stock was undervalued).[1] Gerald testified that he "knew" the information was "confidential." Defendants, except Goldinger, continued to trade, so that all told, Defendants made 22 trades, constituting 7% of the trading volume in Thrifty stock that day. After all the trades and the announcements, Gerald testified that Cohen had commented "we owe Jay [Goldinger] for this one," and Gerald stated that it was "obvious" Goldinger was the source of the information about Thrifty.
 
 
 11
 The district court granted summary judgment to Defendants because the SEC failed to produce sufficient evidence that Goldinger actually made an improper disclosure of information to Cohen. The court held that (1) Goldinger's query to Cohen could not itself support a prima facie misappropriation case, and (2) all other alleged disclosures were too speculative to take to a jury.
 
 DISCUSSION
 
 12
 Summary judgment decisions are reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). The court may affirm summary judgment on an alternative ground to that given by the district court, if the record fairly supports the other ground. Fidelity Fin. Corp. v. Fed. Home Loan Bank, 792 F.2d 1432, 1437 (9th Cir.1986), cert. denied, 479 U.S. 1064 (1987).
 
 
 13
 Summary judgment is appropriate where no disputed issues of material fact exist. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1220 (9th Cir.1995). The non-movant is entitled to have all inferences from the evidence drawn in its favor, provided that the inferences are reasonable. Id. The non-movant must, however, do more than offer arguments "based on mere speculation, conjecture, or fantasy." O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir.1986).
 
 DISCUSSION
 I. Evidence of an Improper Disclosure
 
 14
 The SEC appeals the district court's summary judgment order that was based on insufficient evidence of improper disclosure or "tip" by Goldinger to the other defendants. The SEC contends that it provided ample evidence from which a factfinder could draw a reasonable inference that Goldinger also made a direct disclosure of the upcoming merger agreement, which could be an illegal tip. The SEC relies heavily on the evidence of "massive and well-timed trading in Thrifty stock and options" as well as the "incriminating statements" made by various defendants acknowledging Goldinger as the source of their attention to Thrifty.
 
 
 15
 The evidence is insufficient to avoid summary judgment because it cannot show that Goldinger actually disclosed to Cohen any material, non-public information about Thrifty.[2] The concrete evidence offered is that Goldinger asked Cohen about Thrifty, that Goldinger told Cohen that Thrifty "put" options were overpriced, and that Goldinger's comments started the others to think about buying Thrifty stock. Goldinger's question to Cohen about Thrifty is clearly not an illegal tip, because it did not reveal any material non-public information. The SEC would have us conclude that the circumstantial evidence creates a reasonable inference that a more direct tipping took place about the merger.
 
 
 16
 Circumstantial evidence can be sufficient to prove insider trading. Herman & MacLean v. Huddleston, 459 U.S. 375, 390-91 n. 30 (1983); Hopkins v. Andaya, 958 F.2d 881, 888 (9th Cir.1992) ("[C]ircumstantial evidence can speak clearly and often unequivocally; properly construed, it is as objective and reliable as any other evidence.") Nonetheless, the district court determined that the SEC failed to offer sufficient evidence of any direct disclosure by Goldinger, noting "there is a vast difference between circumstantial evidence and pure speculation."
 
 
 17
 We agree with the district court. The SEC evidence is weak and speculative. As the district court noted, the evidence is consistent with the "innocent" explanation offered by Defendants. The SEC has not produced sufficient evidence for a jury to find by a preponderance of the evidence that illegal tipping occurred. See Triton Energy, 68 F.3d at 1222 (affirming summary judgment where quality of expert evidence was not sufficient to justify jury trial on central issue). Furthermore, the inference of more direct tipping is unreasonable because it involves too many inferred steps and amounts to no more than conjecture. Therefore, summary judgment is justified.
 
 
 18
 Although reasonable inferences must be drawn in the SEC's favor, the SEC cannot merely provide circumstantial evidence to show the possibility of illegal trading. The SEC's evidence and reasonable inferences from that evidence must be sufficient to allow a reasonable jury could find it met its burden of persuasion at trial. This it failed to do.
 
 
 19
 Defendants offer several alternative bases for summary judgment. They state that the SEC failed to state a cause of action because misappropriation theory is no longer a viable theory after the Supreme Court's decision in Central Bank v. First Interstate Bank, 511 U.S. 164, 114 S.Ct. 1439 (1994). Because it granted summary judgment on other grounds, the district court declined to address Defendants' challenge to the viability of the misappropriation theory. We decline to address this contention for the same reason. We also decline to address Defendants' other alternative grounds to affirm the summary judgment relating to the public nature of the information and to the requirement that any misappropriation be "in connection with" a securities transaction.
 
 
 20
 II. The SEC's Motion for Partial Summary Judgment as to Non-Public Nature of Information Allegedly Disclosed
 
 
 21
 The SEC's appeal of the district court's denial of its motion for partial summary judgment about the public nature of the information is moot because we affirm the district court's summary judgment in favor of Defendants.
 
 CONCLUSION
 
 22
 The district court's summary judgment on grounds of lack of evidence of an improper disclosure is AFFIRMED on the ground stated by the district court; we decline to address the alternative grounds for summary judgment. The denial of the SEC's motion for partial summary judgment on the non-public nature of the merger information is therefore moot.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court noted that this was probably inadmissible as hearsay. We do not decide this issue because even if the evidence is considered, the SEC did not produce sufficient evidence to avoid summary judgment
 
 
 [2]
 Based on the SEC's allegations, if Goldinger did not illegally tip Cohen, the SEC has no case against the other defendants. Goldinger allegedly tipped Cohen, who traded and disseminated the information to the other defendants, who also traded. Allegedly, Gerald also overheard at least one of Goldinger's statements to Cohen