68 F.3d 1216
 Prod.Liab.Rep. (CCH) P 14,401, 95 Cal. Daily Op.
Serv. 8394,
95 Daily Journal D.A.R. 14,480
TRITON ENERGY CORPORATION, a Texas Corporation; Page
Airport Services, Inc., a Nevada Corporation, Plaintiffs,
and
Continental Loss Adjusting, Inc., a New Hampshire
Corporation, Intervenor-Appellant,
v.
SQUARE D COMPANY, Defendant-Appellee.
TRITON ENERGY CORPORATION, a Texas Corporation; Page
Airport Services, Inc., a Nevada Corporation,
Plaintiffs-Appellants,
v.
SQUARE D COMPANY, Defendant-Appellee.
 Nos. 94-15544, 94-16132,
94-15588 and 94-16130.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 16, 1995.
Decided Oct. 27, 1995.
 
 J. Albert Kroemer, Charles H. Smith, Smith & Moore, Dallas, Texas, and Daniel F. Polsenberg, Beckley, Singleton, De Lanoy, Jemison & List, Las Vegas, Nevada, for plaintiffs-appellants.
 David K. Rosequist, Bell and Young, Ltd., Las Vegas, Nevada, for intervenor-appellant.
 Laurie J. Nicholson, Thompson, Hine and Flory, Dayton, Ohio, and Kathleen J. England, England & Associates, Las Vegas, Nevada, for defendant-appellee.
 Appeals from the United States District Court for the District of Nevada.
 Before: SNEED, KOZINSKI, and NOONAN, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Triton Energy Corporation, Page Airport Services, Inc., and Continental Loss Adjusting, Inc. (Triton) appeal the district court's final judgment which granted Square D Company's motion for summary judgment and denied Triton's motion to alter or amend. We affirm the district court's grant of summary judgment.[1]
 
 I.
 FACTS & PROCEEDINGS BELOW
 
 2
 The circumstances of this case are quite unusual. It begins with a fire in the Hughes Hangar in Las Vegas, Nevada, continues with inefficient fire inspectors, the razing of the fire-damaged hangar because of asbestos problems, several experts on the causes of the fire, and ends with a still missing circuit breaker allegedly manufactured by Square D Company several decades ago. It was and remains an unsolved mystery. The facts, more precisely stated, are as follows.
 
 A. The Fire and Investigation
 
 3
 On October 9, 1989, a fire in the Hughes Hangar extensively damaged several aircraft as well as the hangar itself. Triton leased the hangar from Clark County, Nevada, and operated an aircraft maintenance business. Immediately following the fire, Clark County Fire Department investigators reported that the probable cause was an electrical malfunction in the lighting circuits of the supervisor's office.
 
 
 4
 Lee Albright, a fire investigator retained by Triton's insurer, located what he believed to be the area of origin of the fire in the ceiling lighting circuit in the supervisor's office. Albright, in his deposition, stated that he and a Hughes employee, Dennis Rasmussen, traced the wiring in the conduit above the office to three specific Square D-manufactured circuit breakers located on the left side of the hallway panel. Rasmussen stated in his deposition that he tested each of the circuit breakers on the left side of the panel and discovered one circuit breaker which indicated "continuity," i.e., the breaker was "on," allowing current to pass through it. Albright took photographs of Rasmussen performing the continuity test, which showed that all of the circuit breakers, with the exception of one, had tripped to the off position. According to Rasmussen, Albright then removed the following items: the circuit breaker that appeared to be "on" (the fourth circuit breaker from the bottom to which a wire was traced), all of the connecting conduits, and one light fixture from the south side of the supervisor's office. Albright retained this evidence for safekeeping. Shortly after the evidence was removed, asbestos was detected in the hangar and access was restricted.
 
 B. The Testing of the Circuit Breaker
 
 5
 On January 22, 1990, Square D was notified of the fire and the allegations concerning its circuit breaker. Square D and Triton arranged for a testing of the circuit breaker on June 12, 1990, although the test was not actually carried out until October 4, 1990. The testing of Square D's circuit breaker in the presence of the parties revealed that the breaker was not defective. Months later, one of Triton's attorneys contacted Albright and asked if it was possible that he had removed the wrong circuit breaker. Albright stated in his deposition that he reexamined the photographs taken before he had removed the circuit breaker and informed the Triton attorneys that "we didn't take the [circuit breaker] that we had tested and that was in the on position." (Intervenor-Appellant's Excerpts of Record (AER) at 168.) The photographs of the circuit panel showed that the breaker in the "on" position was located in the fifth position from the bottom to which wiring in the conduit had been traced. The circuit breaker Albright removed, which was tested by the parties, was located, as mentioned above, in the fourth position from the bottom.
 
 C. The Demolition of the Hangar
 
 6
 The cleanup and demolition of the hangar because of asbestos contamination began on March 1, 1990, and was completed in June 1990. According to Square D, it learned of the hangar's demolition only after the fact on July 9, 1990. Because Triton and the insurance companies were under the false assumption that Albright had removed the defective circuit breaker, neither the panel box nor any of the other circuit breakers were salvaged prior to the hangar's demolition. Consequently, Triton was left without the most critical piece of evidence--the allegedly defective Square D circuit breaker.
 
 D. Triton's Case
 
 7
 Triton brought this action in state court on October 8, 1991, stating causes of action for breach of warranties, negligence and strict liability. Square D removed the action to the district court and Continental Loss Adjusting, Inc., a subrogated insurer which had paid Clark County pursuant to a property damage policy, intervened as plaintiff.
 
 
 8
 After lengthy discovery lasting some eighteen months, the evidence regarding the missing circuit breaker essentially consisted of opposing expert opinion. Triton's expert was Douglas Bennett. Relying on the testing conducted by Albright and Rasmussen, and a photograph taken by the Fire Department, Bennett stated:
 
 
 9
 The handle is clearly in the "on" position, not in the trip position. Unless--in this particular case, unless there is a defect in the breaker, it hasn't tripped.... [I]t's my conclusion, based on all the evidence, that this breaker didn't trip. (Appellant's Excerpts of Record (ER) at 180, 182.)
 
 
 10
 Square D's expert, Edward Dessert, differed. His opinion was that the failure of the handle to move to the tripped position did not mean the breaker had failed to trip. Dessert stated:
 
 
 11
 [T]he breaker can and will "trip" properly and the handle may not move to the fully tripped position. In other words, the fact that the handle is not in the fully tripped position is not indicative that the internal automatic mechanism of the breaker has not "tripped." (AER at 101-02.)
 
 
 12
 To establish that the missing circuit breaker caused the fire, Bennett opined that
 
 
 13
 [i]n the context of the evidence presented in this case, I have concluded that it is highly improbable for a properly operating circuit breaker to be able to heat the conduit to ignition temperature. Therefore, a properly operating circuit breaker would not have allowed this fire to be started. (ER at 135-36.)
 
 
 14
 Bennett also opined that the circuit breaker was defective at the time it left Square D.[2] He stated that the missing circuit breaker contained a design or manufacturing defect. Bennett concluded that
 
 
 15
 the most probable failure mechanism [in this case] is a blockage of the internal operating mechanism of the circuit breaker by a foreign object, most probably a piece of the case or the fiber slide.... [A]s it relates to the fiber slide, I think that's clearly a design defect. As it relates to the chipping of the case, that may be a manufacturing defect. (AER at 677, 679.)
 
 
 16
 Bennett gave this as the basis for the foregoing opinion:I think primarily based on the deposition of Mr. Dessert that I attended wherein he described the numerous modifications that had been made with the case, both in material and molding characteristics, and also the significant body of information concerning the propensity of the slide to break and become dislodged within the cavity or the body of the circuit breaker. (AER at 677.)
 
 
 17
 Square D offered Dessert's expert opinion to refute Bennett's design and manufacturing defect theory. Dessert stated:
 
 
 18
 I have never seen a Square D circuit breaker returned from the field where the circuit breaker was prevented from automatically tripping by either a loose chip from the case or a broken fiber slide. I have seen circuit breakers returned from the field that contained broken fiber slides but this condition ... would not and has not prevented any circuit breaker from performing its designed automatic trip function. (AER at 103.)
 
 
 19
 Neither party offered evidence as to whether the allegedly defective circuit breaker had been damaged in the more than twenty year period since it left Square D's plant.
 
 E. The District Court's Disposition
 
 20
 Square D filed a motion to dismiss, or alternatively, for summary judgment. Square D argued that the case should be dismissed because Triton had allowed critical evidence to be destroyed. Square D also argued for the preclusion of Triton's expert testimony because of evidence spoliation and, based on such preclusion, to grant summary judgment because no genuine issues of material fact would remain for trial. The district court granted Square D's summary judgment motion and denied Triton's motion to alter or amend. The district court, without addressing the spoliation issue, ruled that Triton had failed to show a genuine issue of material fact with regard to whether the defect in the circuit breaker existed when it left the Square D plant. The district court entered final judgment in the case on May 27, 1994. Triton timely appeals the district court's grant of summary judgment and the denial of the motion to alter or amend. Accordingly, this court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 II.
 DISCUSSION
 
 21
 The principles by which we are guided are familiar. A grant of summary judgment is reviewed de novo. U.S. ex. rel. Anderson v. Northern Telecom, Inc., 52 F.3d 810, 815 (9th Cir.1995). Viewing the evidence in the light most favorable to the nonmoving party, this court must determine whether there are any genuine issues of material fact. All reasonable inferences must be drawn in the nonmoving party's favor, but such "inferences are limited to those upon which a reasonable jury might return a verdict." Id. (citing T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir.1987)). Before we apply these principles, however, we shall dispose of two preliminary matters; i.e., Triton's proper notice issue, and Square D's spoliation issue.
 
 A. Notice
 
 22
 Triton contends that the district court erred by granting summary judgment on an issue not raised or briefed by Square D. Triton argues that it did not receive proper notice, as required by Fed.R.Civ.P. 56, that it must present evidence concerning each element of its strict products liability claim. However, Triton had the opportunity to submit, and did submit, evidence in its motion to alter or amend. It consisted of the Bennett deposition described above. Bennett's opinion, as already pointed out, was that the alleged circuit breaker defect primarily was a manufacturing or design defect. There is no reason to believe that Triton was deprived of an opportunity to present such evidence as was available.
 
 B. Spoliation of Evidence
 
 23
 Although Square D acknowledges that the district court did not rely on its spoliation argument in disposing of the case, it now argues that "an appellate court may affirm a lower court's grant of summary judgment on any basis supported by the record even if the lower court applied the incorrect legal standard." USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1279 (9th Cir.1994). While that is a proper principle, we do not think it applicable to this case.
 
 
 24
 It is true that the absence of the alleged defective circuit breaker and its container has made this case a difficult one for both parties. It is also true that Triton had a better opportunity to preserve this item than did Square D. However, the district court did not address this issue and we decline to do so on the basis of the record before us. See Aguon v. Calvo, 829 F.2d 845, 849 (9th Cir.1987).
 
 C. Genuine Issue of Material Fact
 
 25
 Triton argues that the district court erred by granting summary judgment because it presented genuine issues of material fact on its strict products liability claim. In a limited sense Triton is correct. The respective experts differ about the condition of the circuit breakers and their containers when they left the Square D plant and whether the failure of a circuit breaker caused the fire. Neither can point to any physical evidence that supports their claim. Triton relies upon Albright and Rasmussen and its expert Bennett, while Square D rests on its absence from the scene immediately after the fire, the absence of any defective circuit breaker, and its expert Dessert. At best, neither party has succeeded in establishing that its version of the facts is more probable than not.
 
 
 26
 The issue thus is whether the plaintiff Triton, upon whom the burden of proof rests, is entitled to present its case to the jury. To succeed before the jury, it must establish by a preponderance of the evidence that a circuit breaker, not in evidence, was shipped from the Square D plant more than two decades ago in a defective condition. At best its evidence merely suggests this is a weak possibility.
 
 
 27
 In affirming the district court's grant of summary judgment to Square D, we are guided by Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In Celotex, the Supreme Court stated:
 
 
 28
 [T]he plain language of [Fed.R.Civ.P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 29
 Also, in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52, 106 S.Ct. at 2505, 2511-12, 91 L.Ed.2d 202 (1986), the Supreme Court explained that the
 
 
 30
 [summary judgment] standard mirrors the standard for a directed verdict.... [T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.
 
 
 31
 Put another way, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. Id. at 252, 106 S.Ct. at 2512. The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient. Id.
 
 
 32
 In analyzing whether Triton has met its burden, we must examine its direct and circumstantial proof and the permissible inferences that may be drawn from such evidence. In United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1547 (9th Cir.), cert. denied 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989), we held that inferences may be drawn from a nonmoving party's direct and circumstantial evidence to establish a genuine issue of material fact so long as such evidence was of sufficient "quantum or quality." We have also held in this context that our "inquiry focuses on whether the nonmoving party has come forward with sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of the nonmoving party's claim." Pacific Elec. Contractors Ass'n, 809 F.2d at 631 n. 3 (9th Cir.1987). Under Nevada law, the applicable substantive law, a plaintiff's strict products liability case must show that:
 
 
 33
 1) the product had a defect which rendered it unreasonably dangerous, 2) the defect existed at the time the product left the manufacturer, and 3) the defect caused the plaintiff's injury.
 
 
 34
 Fyssakis v. Knight Equip. Corp., 108 Nev. 212, 826 P.2d 570, 571 (1992). We also recognize that expert opinion may defeat summary judgment if it appears the expert is competent to give an opinion and the factual basis for the opinion is disclosed. Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.1995).
 
 
 35
 However, Triton's entire case rests precariously on the opinion of its expert, Douglas Bennett, who never examined the allegedly defective circuit breaker. This substantially impaired his ability to express a reliable expert opinion based upon specific facts. Therefore, we find that Bennett's expert opinion and the inferences Triton seeks to draw from it are not of sufficient quantum or quality to create genuine issues of material fact. United Steelworkers of Am., 865 F.2d at 1547. The only other evidence is that of Albright and Rasmussen, over which the absence of a defective circuit breaker hangs like a cloud.
 
 
 36
 The fundamental problem which Triton confronts is that, as the plaintiff who has suffered a loss, it has failed to show that it could demonstrate to a jury by a preponderance of the evidence that its loss ought to be shifted to Square D. True, Square D could not demonstrate by a preponderance of the evidence that its circuit breaker was not defective when it left its plant. That does not matter. The ultimate burden is on Triton. Nor can Triton defeat Square D's motion for summary judgment by drawing its strength from the weakness of its opponent's defense or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." Pacific Elec. Contractors Ass'n, 809 F.2d at 630. Instead, Triton "must produce at least some 'significant probative evidence tending to support the complaint.' " Id. (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Square D, in seeking summary judgment, only has to show that Triton cannot establish an element of its case--that the circuit breaker was defective when it passed to the hands of a purchaser many years ago.
 
 
 37
 Triton has simply failed to present sufficient probative evidence that would require a jury decision. A jury should not be asked to evaluate the credibility of experts concerning the defectiveness of a circuit breaker and its container when it left the hands of Square D, which the experts have neither seen nor can see, and which was manufactured more than two decades ago. These circumstances would impose upon the jury the unenviable task of listening to two expert's opinions unsupported by any physical evidence to bolster either opinion. Triton has failed to establish the existence of an element essential to its case on which it will bear the burden of proof at trial.
 
 
 38
 Under these circumstances, we hold that no reasonable jury could find that Triton is entitled to a verdict. See Anderson, 477 U.S. at 252, 106 S.Ct. at 2512; Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 III.
 CONCLUSION
 
 39
 The district court's judgment granting Square D's motion for summary judgment and denying Triton's motion to alter or amend is affirmed.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 Continental argues that the district court erred by granting summary judgment solely on the basis of strict liability without resolving the breach of warranties and negligence claims. Because we find that the plaintiffs failed to establish that a defect existed at the time the circuit breaker passed to the hands of Square D, an element which is essential to both the breach of warranties and negligence claims, it is unnecessary to address these claims specifically
 
 
 [2]
 Both parties agreed that the missing Square D circuit breaker left the manufacturer sometime between 1958 and 1968