Jane DOE et al., Plaintiff,

v.

**BENICIA UNIFIED SCHOOL DISTRICT et al.,** Defendants.

No. CIV.S–01–1442 FCD PAN.

United States District Court, E.D. California.

April 22, 2002.

Larry E. Cook, Thom Seaton, Casper, Meadows & Schwartz, Walnut Creek, CA, for the Plaintiff.

Thomas G. Beatty, Lisa R. Roberts, Ralph W. Kasarda, McNamera, Dodge, Ney, Beatty, Slattery & Pfalzer LLP, Walnut Creek, CA, for the Defendants.

*MEMORANDUM AND ORDER*

DAMRELL, District Judge.

A custodian at plaintiff Jane Doe's ("plaintiff" or "Jane") former elementary school sexually molested her on school grounds. She alleges that school officials, in their individual capacities, violated her constitutional right under the Fourteenth Amendment to be free from invasion of her liberty interest in her bodily integrity.[1] Plaintiff brought a claim for these violations under 42 U.S.C. § 1983 against defendants Ellen Blaufarb ("Blaufarb"), the school principal, Archie Kinney ("Kinney"), the Director of Employee Services, and Annette O'Connor ("O'Connor"), the Superintendent (collectively, "defendants"). She also asserts two state law torts against defendants for premises liability and negligent supervision.[2]

This matter is before the court on defendants' motion for partial summary judgment on plaintiff's sixth, seventh, and eighth claims for relief. Alternatively, defendants ask for partial summary judgment on plaintiff's eighth claim for violation of § 1983 and a remand of the remaining state law claims. On April 19, 2002, the court heard oral argument on the matter. For the reasons set forth below, the court grants defendants' motion for partial summary judgment on the § 1983 claim, and remands the state law claims to the Solano County Superior Court.

## BACKGROUND[3]

Jane was born on May 2, 1986. Pltf.'s Resp. to Defs.' Stmt. of Undisp. Facts, filed Apr. 8, 2002, ¶ 1. Her parents were separated during the time the events in this case occurred. *Id.* ¶ 2. Prior to 1997, Jane lived with her mother in Benicia, where she attended Mills Elementary School in 1994. *Id.* ¶ 3. Since 1997, Jane has lived with her father, in Martinez, California. *Id.* ¶ 4. She currently attends high school in Martinez, California. *Id.* ¶ 5.

At the beginning of the 1998–1999 school year, the Benicia Unified School District sponsored an ice cream social at Mills Elementary School, which Jane and her friend, Jimmy, attended. *Id.* ¶ 6. Following the ice cream social, Jane and Jimmy met defendant Carlos Aparicio ("Aparicio"). *Id.* ¶ 7. Aparicio was one of the full time custodians for Mills Elementary School, who worked alone from 2:00 p.m. until 10:00 p.m. weekdays. *Id.* ¶ 8. It was routine for parent-teacher groups to help with the cleanup following this event, and sometimes students.[4] *Id.* ¶ 9. Jane and Jimmy helped Aparicio put away chairs following the ice cream social, along with other children. *Id.* ¶ 10.

---

1. Plaintiff's complaint also alleged violation of her right to be free from sexual harassment under the Equal Protection Clause. However, plaintiff abandons this theory in her opposition to defendants' motion for summary judgment by not mentioning it or citing any equal protection cases.

2. Additionally, plaintiff asserts five state law claims against defendant Carlos Aparicio for sexual battery, rape, unlawful sexual intercourse with a minor, lewd and lascivious acts with a minor 13 years of age, and penetration by a foreign object against a minor under 14 years of age.

3. Unless otherwise noted, the facts recited herein are undisputed. *See* Pltf.'s Resp. to Defs.' Stmt. Of Undisp. Facts, filed Apr. 8, 2002. Where the facts are in dispute, the court recounts plaintiff's version of the facts.

4. Plaintiff disputes this fact in part: she asserts that Kinney knew that students were prohibited from assisting custodians in any way. *Id.* ¶ 9. However, she does not dispute that it was routine for students to help with cleanup after the ice cream social, despite the prohibition.

In December 1998, Mills Elementary School held a ceremony marking the completion of a Drug Abuse Resistance Education ("DARE") program. *Id.* ¶ 11. Jane attended that ceremony, along with approximately one hundred other people, including many police officers. *Id.* ¶ 12. After the ceremony, Jane and Jimmy helped Aparicio put away chairs.[5] *Id.* ¶ 13.

Again, on January 29, 1999, Jane returned to Mills Elementary School with Jimmy to help Aparicio clean rooms.[6] *Id.* ¶ 14. While they were there, Blaufarb saw them with Aparicio in the school library. *Id.* ¶ 15. It was after school hours. *Id.* Blaufarb told Jane and Jimmy to leave. *Id.* Blaufarb admonished Aparicio for allowing the children to help him with his work. *Id.* ¶ 16. Aparicio told Blaufarb that it would not happen again. *Id.* ¶ 17.

In January or early February 1999, Aparicio called Jane's home on at least two occasions, but Jane's father answered the phone. *Id.* ¶ 18. Although Aparicio telephoned Jane's home, he never spoke with Jane on the phone. *Id.* ¶ 19. On February 9, 1999, Jane's father telephoned Blaufarb and informed her about the telephone calls from Aparicio. *Id.* ¶ 20. Blaufarb asked Jane's father to write a letter to her documenting everything, which he did on February 19, 1999. *Id.* ¶ 21.

On February 9, 1999, after speaking with Jane's father on the telephone, Blaufarb telephoned Guy Creighton ("Creighton"), the Maintenance Director, and informed him of her conversation with Jane's father. *Id.* ¶ 22. On the same day, after speaking with Blaufarb on the telephone, Creighton called Kinney, who advised him to meet with Aparicio and a union shop steward. *Id.* ¶ 23. Kinney then discussed the matter with O'Connor. *Id.* ¶ 24.

On February 9, 1999, the same day that Jane's father telephoned Blaufarb, Creighton asked Aparicio and a union representative, John DaSilva ("DaSilva"), to come to his office. *Id.* ¶ 25. Creighton met with Aparicio and DaSilva that day. *Id.* ¶ 26. Creighton strongly reprimanded Aparicio for making the telephone calls to Jane. *Id.* ¶ 27.

Following his meeting with Aparicio, Creighton recommended to Kinney that Aparicio be terminated.[7] *Id.* ¶ 28. Kinney, however, believed that Aparicio's action was insufficient to justify his termination. *Id.* ¶ 29. Aparicio was a paid member of the union. *Id.* ¶ 30. The work of Aparicio during his probationary period was exemplary. *Id.* ¶ 31. After discussing the matter with Kinney, Creighton changed his mind and agreed that termination was inappropriate. *Id.* ¶ 32. After

---

5. Blaufarb testified that several other students helped Aparicio put away chairs at the DARE ceremony. Blaufarb Dep., taken Oct. 18, 2000, at 61:2–4 attached as Ex. C to Beatty Decl., filed Mar. 18, 2002. However, Jane testified that she and Jimmy were the only students who assisted Aparicio on that occasion. Doe Dep., taken Nov. 30, 2000, at 49:18–20, attached as Ex. 1 to Seaton Decl., filed Apr. 8, 2002. The court adopts plaintiff's version of the facts for purposes of deciding this motion.

6. Defendants stated that Jane and Jimmy returned to Mills Elementary School to help Aparicio clean rooms in December 1998 or January 1999. Blaufarb Dep. at 73:24–26

attached as Ex. C to Beatty Decl. Plaintiff asserts that, according to Blaufarb's memorandum, it occurred on January 29, 1999. Blaufarb Mem., dated Mar. 3, 1999, attached as Ex. 13 to Seaton Decl. The court finds the difference immaterial, and uses the more precise date.

7. Plaintiff disputes this fact, but the court inserts it here just for clarity. Kinney testified that he had "no rememberance" of Creighton's recommendation that Kinney terminate Aparicio. Kinney Dep., taken Feb. 15, 2001, at 61:20–24 attached as Ex. 6 to Seaton Decl.

Aparicio met with Creighton and DaSilva, he also met with, and was reprimanded by Blaufarb and Creighton. *Id.* ¶ 33. In addition to orally reprimanding Aparicio for telephoning Jane, Creighton wrote a letter of reprimand to Aparicio, which was included in his job file. *Id.* ¶ 35.

Aparicio did not phone Jane or see her again until the day of the molestation. *Id.* ¶ 36. During the remainder of the school year, Kinney, Blaufarb, and Creighton all monitored Aparicio at work. *Id.* ¶ 37. During the school year, Creighton went to Mills Elementary School at night to make sure Aparicio was working alone. *Id.* ¶ 38.

Between January and May 1999, Aparicio's custodial work deteriorated. *Id.* ¶ 39. On March 3, 1999, Blaufarb sent Aparicio a written reprimand which referenced his work and his earlier phone calls to Jane. *Id.* ¶ 40. Blaufarb was aware that Aparicio was under stress due to personal difficulties with his family. *Id.* ¶ 41. Blaufarb recommended to Kinney that Aparicio be terminated. *Id.* ¶ 42. In her written evaluation of Aparicio, dated May 10, 1999, Blaufarb graded Aparicio substandard. *Id.* ¶ 43. Although Aparicio's work performance deteriorated, Blaufarb had no knowledge or indication of any contact between Aparicio and Jane from the time of his February reprimand until June 21, 1999. *Id.* ¶ 44.

On June 21, 1999, Jane was staying at her mother's house in Benicia. *Id.* ¶ 45. During the day, Jane went swimming at the Benicia Swimming Pool with her brother and a friend. *Id.* ¶ 46. They walked past Mills Elementary School on their way back home. *Id.* Jane used the water fountain on the Mills Elementary School grounds. *Id.* ¶ 47. After using the fountain, she told her brother and friend that she was going to walk to another friend's house by walking through the school grounds. *Id.* Jane let her brother

and friend go home. *Id.* ¶ 48. On the school grounds, she met Aparicio who took her to a bathroom where the molestation occurred. *Id.* On August 19, 1999, Aparicio was convicted of lewd and lascivious acts upon a minor, Jane, and was sentenced to three years in state prison. *Id.* ¶ 49.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *see California v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102–03 (9th Cir.2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square*

*D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *See Nissan Fire & Marine*, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## ANALYSIS

### 1. § 1983 Claims

Plaintiff brings a claim against defendants under 42 U.S.C. § 1983 for violation of her substantive due process rights. Plaintiff asserts liability against defendants based on their supervisory authority over Aparicio.[8] Defendants move for summary judgment on the ground that qualified immunity shields them from liability. Defendants also move for summary judgment on the ground that there is an absence of evidence to support the claim.

 "The Constitution protects a child's right to be free from sexual abuse by school employees while attending public school." [9] *Plumeau v. Sch. Dist. # 40*, 130 F.3d 432, 438 (9th Cir.1997), *citing Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir.1994) (en banc). A student can hold a supervisory school official liable for a subordinate's violation of the student's substantive due process right to bodily integrity against sexual abuse where she establishes:

(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student.

*Taylor*, 15 F.3d at 454; *see also Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir.1998) (same); *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir.1993) (same); *Plumeau v. Yamhill Sch. Dist. # 40*, 907 F.Supp. 1423, 1432 (D.Or.1995) (same), *aff'd* 130 F.3d 432 (summarily affirming the part of the decision at issue in the present case); *Thelma D. v. Bd. of Educ.*, 934 F.2d 929, 932–933 (8th Cir.1991) (standard for establishing liability against a municipality is the same).

 As an initial matter, defendants assert that qualified immunity shields them from liability for Aparicio's conduct. When an official acts as a reasonable officer believing his conduct was proper under the law, the official is immune from suit for that conduct. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Officials, however, are not immune from violations when the liberty interest and the official's duty are clearly estab-

---

8. The complaint names Blaufarb, Kinney, and O'Connor in the claim for violation of § 1983. In plaintiff's opposition to the motion for summary judgment, however, she concedes that Blaufarb's actions do not constitute a violation of § 1983. Opp'n to Mot. for Summ. J., filed Apr. 8, 2002, at 45. Therefore, the court GRANTS summary judgment on this claim in favor of Blaufarb, and directs the remainder of its discussion to the claims against Kinney and O'Connor.

9. Although defendants do not raise the issue, it is unclear under *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), whether due process would protect a child, such as Jane, who is not currently a student of the school district. The court, however, need not consider the issue because it grants summary judgment on another ground.

lished. *Taylor*, 15 F.3d at 454. The *Taylor* court found that a student's right to be free from sexual abuse and the duty of school officials regarding this right were established at least as early as 1987. *Id.* at 455. The conduct at issue in this case occurred in 1998–1999. Therefore, defendants' argument fails: if the *Taylor* factors are met, then qualified immunity will not shield them from liability.

Turning to the *Taylor* factors, defendants establish the absence of "facts or a pattern of inappropriate sexual behavior ... pointing plainly toward" Aparicio's sexual abuse of Jane. *Taylor Indep. Sch. Dist.*, 15 F.3d at 454. No genuine issue of material fact regarding this factor exists. Therefore, the court grants the motion for summary judgment on this ground.

Under the case law, the undisputed facts are insufficient to raise a material issue of fact regarding Kinney's or O'Connor's knowledge of inappropriate sexual behavior pointing plainly toward sexual abuse. For example, in *Gates*, a teacher sexually assaulted a student at school, and the student brought a § 1983 claim against the school principal, among others. 996 F.2d at 1036. The principal had previously noted in the teacher's evaluation that he should not travel to attend activities with students. *Id.* at 1039. Further, the principal knew that the teacher married one of his former students when she turned 18 years of age. *Id.* The superintendent also informed the principal of other "rumors or innuendo." *Id.* Finally, the principal knew that the assaulted student was infatuated with the teacher, and that the teacher encouraged her. *Id.* at 1042. However, the court determined that this evidence was insufficient to "support a finding that [the principal] had any notice of sexual misconduct by [the teacher]" for purposes of establishing a constitutional violation. *Id.* at 1042.

The Tenth Circuit later applied *Gates* in *Jojola v. Chavez* in the context of a motion to dismiss. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995). There, a janitor molested a student, and the student brought a § 1983 claim against the principal and superintendent. *Id.* The complaint specifically alleged that, prior to the assault, school officials were aware that the janitor: (1) was alleged to have put a hole in the wall of the girls' locker room, through which he observed them, (2) was alleged to have made sexual comments to girls at school, (3) was removed from his position as a school bus driver because of inappropriate contact with a pre-teen female student, and (4) was transferred to the high school after he had unhooked brassieres of junior high school girls. *Id.* at 491. The court rested its decision upon lack of proof of actual knowledge on the part of the specific defendants. *Id.* The court also stated, however, that "plaintiffs allege four incidents and other rumors, none of which we believe demonstrates the requisite pattern of behavior necessary to support imposing liability." *Id.*

Finally, a similar case from the District of Oregon is instructive. There, a school janitor sexually abused a female elementary student, who later sued the school district under § 1983.[10] *Plumeau*, 907 F.Supp. at 1432. The school district knew, prior to the plaintiff's victimization, that the janitor "had: (1) been failing to properly clean the school because he was spending too much time watching students on the playground; (2) on several occa-

---

**10.** In *Plumeau* the defendant was a municipality, but the court applied the *Taylor* individual supervisor standard, finding no "principled reason" for a different standard of liability. *Plumeau*, 907 F.Supp. 1423, 1440 (D.Or.1995). Therefore, the court considers the case persuasive authority because it employs the same standard.

sions held the hands of . . . students; (3) twice picked up . . . students; and (4) hugged students on approximately five occasions." *Id.* at 1440. The court was "unwilling to conclude" that such conduct "points plainly toward the conclusion that [the janitor] was sexually abusing [the student] or any other student." *Id.* (internal quotation omitted). The court found the evidence could "just as easily be read to indicate a lazy or slack employee (wasting time by watching students) or the friendly gesture of an authority figure who is regularly around students (talking to them, hugging them, picking them up)." *Id.* Therefore, the court found as a matter of law that the school district "cannot be held liable for a *constitutional violation* for failing to act on such benign observations." *Id.* at 1441.

■ In the present case, plaintiff has not established "facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student." *Taylor,* 15 F.3d at 454. Helping put away chairs after two events, helping clean once after school with her friend Jimmy, their conversation with Aparicio afterwards in the library, and two attempted phone calls to her do not satisfy the test for finding a constitutional violation.

First, even construing the facts in the light most favorable to plaintiff, the court does not find this activity to be "sexual behavior." *See, e.g., Plumeau,* 907 F.Supp. at 1440 (even watching, holding hands, hugging, and "picking up" students is not clearly sexual behavior).

Second, the court finds that the activity does not point plainly toward sexual abuse. Although "[h]indsight lends an increased and ominous significance to these prior incidents[,]" as a matter of law they do not present a sufficient pattern to clearly indicate sexual abuse. *Thelma D.,* 934 F.2d at 933. In *Gates, Jojola,* and *Plumeau* the behavior more strongly indicated potential sexual abuse than the present case. 996 F.2d at 1039, 1042, 55 F.3d at 491, 907 F.Supp. at 1440. However, the courts found that the evidence in these cases did not point plainly toward sexual abuse. 996 F.2d at 1042, 55 F.3d at 491, 907 F.Supp. at 1440. Therefore, this court cannot find that Aparicio's allowing Jane to help put away chairs and clean rooms, talking with her, and his two attempted phone calls to her, points plainly toward sexual abuse.

Based on these undisputed facts, the court finds an absence of evidence to support plaintiff's case. Therefore, the burden shifts to the plaintiff to produce evidence on which a reasonable trier of fact could find in her favor viewing the record as a whole. *See Triton Energy Corp.,* 68 F.3d at 1221.

■ Plaintiff asserts that the following disputed factual issues preclude summary judgment: (1) defendants' decision to simply reprimand Aparicio was inconsistent with their testimony that they viewed the conduct as unethical and highly inappropriate, and that they did not accept his explanation that he only wanted to be Jane's friend; (2) the purported confusion and contradictions regarding how they arrived at this decision; and (3) defendants' disciplinary decision could not be reasonable given Kinney's apparent lack of concern over Aparicio's contacts with Jane. Opp'n at 2–3. Plaintiff also contends that there are factual disputes over Kinney's real motivation for deciding not to dismiss Aparicio, whether Kinney personally reprimanded Aparicio, and the effectiveness of defendants' monitoring of Aparicio. Pl.'s Resp. to Defs.' Stmt. of Undisp. Facts, ¶¶ 29, 34, 37. However, these issues are directed to the deliberate indifference prong of the *Taylor* test (step 2), not to the knowledge prong (step 1). There is no

factual dispute over the extent of the contacts between Aparicio and Jane, or defendants' knowledge of these contacts. Therefore, plaintiff has not met her burden of putting forth sufficient evidence for a reasonable jury to find in her favor on this issue.

Since there is no genuine issue of material fact regarding defendants' knowledge of inappropriate sexual behavior pointing plainly toward sexual abuse, the court need not reach the issue of whether plaintiff could establish deliberate indifference. To satisfy the *Taylor* test, both must be present to find a constitutional injury. 15 F.3d at 454.

Nevertheless, the court notes that deliberate indifference is the "fail[ure] to take action that was obviously necessary to prevent or stop the abuse[.]" *Id.* However, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference ...." *Dallas*, 153 F.3d at 219. Here, defendants' severe reprimand of Aparicio following the phone call incident does not appear to be a deliberately indifferent response to the inappropriate non-sexual behavior. *See Taylor*, 15 F.3d at 458 (plaintiff did not demonstrate deliberate indifference where after learning that student had photos of her and teacher with affectionate notes from the teacher, superintendent reprimanded and warned the teacher of future consequences); *Cf. Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 712–713 (3d Cir.1993) (deliberate indifference not shown where upon receiving complaint of possible sexual abuse, superintendent met with parents and bus driver and determined that probably no abuse occurred); *Dallas*, 153 F.3d at 219 (deliberate indifference not shown where upon receiving complaint of possible sexual abuse, principal met with teacher, mother and victim and determined that no abuse occurred). Therefore, ineffective or mistaken responses do not constitute deliberate indifference. The court could alternatively grant summary judgment on this ground; however, it is not required to do so, since plaintiff does not establish the first prong of the *Taylor* test.

## 2. Supplemental Jurisdiction Over the Remaining State Law Claims

The court remands plaintiff's remaining state law claims to the Solano County Superior Court. Defendants, who originally removed the case to this court, request remand, and the court finds it appropriate.

A district court has supplemental jurisdiction over state law claims arising from the same case or controversy as a federal claim providing original jurisdiction. 28 U.S.C. § 1367(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). The court may retain jurisdiction over the other claims even if it determines that the federal claim lacks merit. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir.1995). However, a district court may decline to exercise supplemental jurisdiction "[w]hen the single federal-law claim [is] eliminated at an early stage of the litigation ...." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In declining to exercise jurisdiction, the court may remand the case back to the initial state court. *Id.* at 357, 108 S.Ct. 614.

■ In the present case, the court determines that remand is appropriate. The court has, by this order, granted summary judgment for defendants on the only claim over which it had original jurisdiction—the § 1983 claim. This circumstance allows it to consider remanding all of the remaining claims. *Id.* The court finds, upon consideration of economy, convenience, fairness, and comity, that it should exercise its discretion to remand the remaining claims. *See id.* at 350 n. 7, 108 S.Ct. 614 ("in the

usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims"); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). First, defendants, who removed the case, request that the court remand the case if summary judgment is granted on the federal claim. Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J., filed Mar. 18, 2002, at 1. Second, remand would not cause significant hardship to plaintiff. Finally, the California courts have a greater interest in deciding this case because California laws are at issue. Accordingly, the court remands the remaining state law claims to the Solano County Superior Court.

### CONCLUSION

The court GRANTS defendants' motion for partial summary judgment on plaintiff's claim for violation of 42 U.S.C. § 1983. The court remands the remaining state law claims to the Solano County Superior Court.

IT IS SO ORDERED.