Jennifer MILLER; Mary Ann Vargas, individually and as the personal representative of the estate of Mark A. Miller, Plaintiffs—Appellants,

v.

BAXTER HEALTHCARE CORPORATION, Defendant—Appellee.

No. 04–15578.

DC No. CV 02–3443 CRB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 2005.

Decided Jan. 30, 2006.

William Campisi, Jr., Berkeley, CA, for Plaintiffs—Appellants.

Catherine M. Barrad, Catherine M. Barrad PC, Long Beach, CA, Frank J. Broccolo, Michelle B. Goodman, Sidley Austin Brown & Wood, LLP, Los Angeles, CA, for Defendant—Appellee.

Before FARRIS, TASHIMA, and CALLAHAN, Circuit Judges.

### MEMORANDUM *

This product liability suit arises out of the death of Mark Miller, who died in his hospital bed while connected to a patient-controlled analgesia ("PCA") pump manufactured by defendant-appellee Baxter Healthcare Corporation. Plaintiffs-appellants, who are the daughters of the decedent, allege that the PCA pump malfunctioned and delivered excess morphine to Miller, causing his death. The district court granted Baxter's motion for summary judgment. Because Plaintiffs failed to present evidence that would support a finding that the PCA pump malfunctioned or failed to perform as safely as an ordinary consumer would expect, they failed to make a showing sufficient to establish the existence of an element essential to their case. Accordingly, we affirm the district court's grant of summary judgment.

The district court gained jurisdiction over the case when Baxter removed the case from state court pursuant to 28 U.S.C. §§ 1332 and 1441. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

We review *de novo* a district court's grant of summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir.1995). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, such "inferences are limited to those upon which a reasonable jury might return a verdict." *Triton*, 68 F.3d at 1220 (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing suf-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

ficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* (internal quotation marks and citation omitted).

Under California product liability law, Plaintiffs were required to show that the PCA pump malfunctioned. *See Barker v. Lull Eng'g Co.,* 20 Cal.3d 413, 143 Cal. Rptr. 225, 573 P.2d 443, 452 (1978) (holding that "a plaintiff satisfies his burden of proof ... in both a manufacturing defect and design defect context, when he proves the existence of a defect and that such defect was a proximate cause of his injuries") (internal quotation marks omitted). The "consumer expectation" theory of product liability expressly requires that Plaintiffs prove that the product failed to perform as safely as an ordinary consumer would expect. *Soule v. Gen. Motors Corp.,* 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298, 308 (1994). In order to preclude summary judgment, Plaintiffs must present specific facts supporting a reasonable jury finding that the pump was defective or failed to perform as expected because it administered extra, unrecorded morphine to Miller.

Plaintiffs produced five types of evidence related to the issue of possible malfunction. We address each in turn, and explain why this evidence is not sufficient to support a reasonable jury finding that the PCA pump malfunctioned.

1. *Engineer Neil Sheehan's declaration as to "mechanical and/or hardware failure"*

■ The only evidence of malfunction provided by engineer Sheehan was his ob-servation, based on the Hopkins Report, that there were instances in which Miller pushed the button up to 80 or 90 times in a single hour, but received only three, rather than the permitted four, doses of morphine. For two reasons, this "evidence" of malfunction does not help Plaintiffs meet their evidentiary burden, even when all inferences are resolved in their favor. First, Sheehan's identification of a possible failure is not probative because he made his findings based on a faulty record. Sheehan relies on the assumption that excess morphine could have been administered to Miller and not recorded by the pump, since he believed the amount left in the syringe at the time of Miller's death was unknown. Sheehan, however, was unaware that Hopkins observed the volume of morphine to be the full 30 ml.

Second, the "failure" Sheehan identifies seems to be either: a) the PCA pump failed by delivering too little morphine, which cannot, of course, assist Plaintiffs with their burden of showing that too much morphine was administered; or b) the recording equipment failed in that, during certain hours, only three doses were recorded but four were administered. However, because undisputed evidence indicates that all 30 ml remained in the syringe after Miller died, even this possible "failure" of the recording equipment cannot raise a reasonable inference that the pump administered extra morphine to Miller.

2. *Dr. Fisher's declaration, referring to "siphoning," a "known hazard" related to PCA pumps*

■ Dr. Fisher's assessment of the PCA pump's failure to perform is similarly incomplete. Dr. Fisher noted in his declaration that "this quantity [15–17 ml] of morphine could have been administered to the patient inadvertently." He continues,

"[a]lthough no one can state unequivocally (or refute) that this drug was administered to Mr. Miller, one possible mechanism by which it was administered (but not recorded on the PCA log) is the siphoning of drug from the PCA pump, a potential hazard identified by Baxter (see appended document)." However, the appended document was not presented to the district court (or this Court), and Dr. Fisher never established a connection between this unidentified "potential hazard" and the specific pump used for Miller. Nor did Dr. Fisher ever inspect the pump, so as to obtain some physical evidence of malfunction.

### 3. Nurse Hill and Nurse Hopkins's Testimony and Documentary Evidence

Plaintiffs argue that there are cross-outs, "overwriting," and third-party manipulation on the PCA Flow Sheet, the document where Miller's nurses documented the volume of morphine administered and remaining in the syringe. Evidence of additional writing of an indeterminate nature cannot support a reasonable inference that Nurse Hill observed fewer than 30 ml of solution in the syringe, which is the only Flow Sheet data that could be probative of pump malfunction.

Plaintiffs also attack the credibility of Nurse Hill and Nurse Hopkins. As the district court correctly held, however, Plaintiffs cannot rely on credibility attacks to defeat summary judgment. *Crawford–El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Far Out Prod., Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir.2001) (holding that a party's assertion that a witness "committed fraud is not in itself sufficient to prevent summary judgment").

### 4. Evidence of the morphine solution missing from the syringe

■ A large percentage of Plaintiffs' evidence relates to the "unaccounted for" 15–17 milligrams of morphine, including evidence of how many samples were removed by Kaiser employees; how the samples were removed from the syringe; which Kaiser and AML records of those samples exist; and the volume of those samples. Even granting Plaintiffs their requested inference that "the alleged removal of fluid ... never occurred," this evidence cannot support a reasonable inference that the morphine missing from the syringe fifteen months after Miller's death had been injected into Miller's body because of a defect in the PCA Pump. This inference is especially unreasonable in light of the fact that two witnesses observed the full 30 ml quantity in the syringe on the day Miller died.

### 5. Expert declarations about Miller's cause of death

■ Nor do the expert declarations about Miller's cause of death assist in defeating summary judgment. Plaintiffs' own experts concluded that the morphine could have been toxic to Mr. Miller *at the level prescribed.* If the morphine could have caused Miller's death at the prescribed level, a reasonable jury cannot infer that there was an overdose, much less infer that pump malfunction was the cause of any overdose.

Resolving all reasonable inferences and factual disputes in Plaintiffs' favor, Plaintiffs cannot establish an essential element of their case; therefore, they have failed to meet their evidentiary burden. Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**