**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

MAY 17 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVID MICHERY, | No. 13-57012 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-04957-RSWL-FFM |
| v. | |
| FORD MOTOR COMPANY, a Delaware corporation, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted March 11, 2016
Pasadena, California

Before: CLIFTON, CALLAHAN, and IKUTA, Circuit Judges.

Plaintiff-Appellant David Michery appeals the district court's grant of

summary judgment in favor of Defendant-Appellee Ford Motor Corporation.

Michery alleges that Ford should be strictly liable for his personal injuries resulting

from an automobile collision because the 1999 Ford Expedition he was driving had

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

a design defect.[1]  We have jurisdiction under 28 U.S.C. § 1291.  We vacate the

district court's grant of summary judgment and remand.

1.  We review a district court's decision to grant summary judgment de

novo.  *Szajer v. City of L.A.*, 632 F.3d 607, 610 (9th Cir. 2011).  We view facts in

the light most favorable to the non-moving party at summary judgment, and

resolve any discrepancies in favor of that party.  *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986).

2.  Under California law, there are "two alternative ways to prove a

design defect": the consumer expectations test and the risk/benefit test.  *Soule v.*

*Gen. Motors Corp.*, 8 Cal. 4th 548, 566 (1994). "[T]he consumer expectations test

is reserved for cases in which the everyday experience of the products' users

permits a conclusion that the product's design violated minimum safety

assumptions, and is defective regardless of expert opinion about the merits of the

design." *Id.* at 567 (italics omitted).  "For example, the ordinary consumers of

modern automobiles may and do expect that such vehicles will be designed so as

---

[1]We only address Michery's design defect claim as he has waived any
appeal of the district court's grant of summary judgment with respect to his
manufacturing defect claim and negligence claim. *See Arpin v. Santa Clara Valley
Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001) ("[I]ssues which are not
specifically and distinctly argued and raised in a party's opening brief are
waived.").

not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions." *Id.* at 566 n.3.

3.  The district court properly found that the consumer expectations test did not apply to Michery's design defect claim. The California Supreme Court held in *Soule* that "ordinary experience and understanding [does not] inform such a consumer how safely an automobile's design should perform under the esoteric circumstances of the collision" that involved the "precise behavior of several obscure components of her car under the complex circumstances of a particular accident." *Id.* Similarly, here, Michery was in an automobile accident when he swerved the 1999 Ford Expedition that he was driving into a roadway median and sideswiped a palm tree. The collision report prepared by the California Highway Patrol (CHP) noted that the vehicle had sustained "major damage" including damage to the left light assembly, the left driver door, the left front fender, the driver side floorboard, and left side of the hood. Additionally, the door had been torn off, the top of the vehicle had been smashed, the windshield had been shattered, and both the driver and passenger airbags had deployed. Michery brought suit alleging that the vehicle's "structural components," and its "interior configuration and components" failed to provide adequate crash protection.

In opposing summary judgment, Michery offered the expert opinion of Dr. Anil Khadilkar, a mechanical and automotive engineer. Dr. Khadilkar elaborated that "[e]xcessive driver compartment deformations were observed in the photos of the Expedition taken at the scene." The dislodged left front fender, the left front tire/rim, and the driver door, led to a "compromised and weakened structural integrity of the driver compartment," including changes to the supportive pillars by the car's door, a kink in the roof, and the driver's seat had pushed forward. Additionally, the floor board came through the toe board as the left fender and left tire/rim were dislodged. Like *Soule*, ordinary experience and understanding would not inform a consumer how safely an automobile design should perform under these circumstances of the collision that involved the "precise behavior of several obscure components of her car under the complex circumstances of a particular accident." The district court correctly found that the consumer expectations test did not apply to Michery's design defect claim.

4. Although the district court properly found that the risk/benefit test applied to Michery's design defect claim, it erred by finding that Michery had not raised genuine issues of material fact. Under the risk/benefit test, "a product is still defective if its design embodies excessive preventable danger, that is, unless the benefits of the design outweigh the risk of danger inherent in such design." *Soule*,

4

8 Cal. 4th at 567 (citations, alterations, and quotation marks omitted). "Once the plaintiff has made a prima facie showing that his or her injury was caused by the product's defective design, the burden shifts to the defendant to establish that, in light of the relevant factors, the product is not defective." *Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1313–14 (2011) (citing *Barker v. Lull Engineering Co.*, 573 P.2d 443 (Cal. 1978)); *see also Soule*, 8 Cal. 4th at 571 n. 8 ("[P]lacement of the risk-benefit burden on the manufacturer is appropriate because the considerations which influenced the design of its product are peculiarly within its knowledge." (quotation marks and alterations omitted)).

Here, Michery has made a prima facie showing that his injuries were caused by the defective design of the Ford Expedition sufficient to withstand summary judgment. Michery's expert opined that "[t]he excessive driver compartment deformation/crush, namely, floor crust, roof crush, A-pillar, B-pillar, and seat crust and attendant movements resulted in entrapment of Mr. Michery's left lower extremity and the resulting forces were the direct cause of his femoral and tibial fractures." Furthermore, the CHP report, photographs, medical records, witness statements and testimony are probative to his contention that the weaknesses in the Expedition's structure as designed caused his injuries. Additionally, the crash tests of other vehicles are probative of the likelihood that such damage was caused by

5

the design of the vehicle at issue here. Dr. Khadilkar compared the accident to an accident reconstruction of a Ford F-150 truck. Although the vehicles are different, Dr. Khadilkar stated that the vehicles have "common parts" including the pillars, the floor, the fender, the suspension and attachments, that were "exactly the parts that were either excessively damaged or dislodged" during Michery's accident. Dr. Khadilkar also considered four crash tests conducted by the National Highway Traffic Safety Administration involving 1999 Ford Expeditions, the same make and model as the vehicle that Michery was driving.[2] Reviewing all of the evidence, we hold Michery presented genuine issues of fact that the Expedition's design caused his injuries. We express no opinion as to the merits of Michery's claims.

5.    The district court also erred in discarding Dr. Khadilkar's expert declaration based on *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir.

_____

[2]*See* Vehicle Crash Test Database, National Highway Traffic Safety Administration, http://www-nrd.nhtsa.dot.gov/database/VSR/veh/ QueryVehicle.aspx (select "Ford"; select "Expedition"; enter "1999" for vehicle model year; click "submit") (last visited April 11, 2016). We grant Michery's motion for judicial notice (Dkt. Nos. 16–17), of the National Highway Traffic Safety Administration's four crash tests on 1999 Ford Expeditions, which are publicly available on the NHTSA's government website. Although we take judicial notice of the existence of these documents, we express no opinion on the truth of their underlying content. However, we deny Michery's motion to supplement the record with the ambulance services report of the accident. Michery has failed to provide any persuasive justification as to why we should consider evidence that he failed to present to the district court.

6

1996).  The *Triton* plaintiffs brought suit against the manufacturer of a circuit breaker that had allegedly malfunctioned and started a destructive fire in an aircraft hangar.  Before it could be examined by experts from either side, the circuit breaker was destroyed due to a miscommunication.  *Id.* at 1219.  As a result, the sole evidence that was available regarding the missing circuit breaker "essentially consisted of opposing expert opinion."  *Id.*  The district court dismissed plaintiffs' claim for failure to show a genuine dispute of material fact.  *Id.* at 1220.

On appeal, we affirmed the dismissal.  Applying Nevada law, we reasoned that "[a] jury should not be asked to evaluate the credibility of experts concerning the defectiveness of a circuit breaker and its container when it left the hands of [the manufacturer], which the experts have neither seen nor can see, and which was manufactured more than two decades ago."  *Id.* at 1222.  The plaintiff's expert's inability to examine the circuit breaker "substantially impaired his ability to express a reliable expert opinion based upon specific facts," and we concluded that his opinion was "not of sufficient quantum or quality to create genuine issues of material fact."  *Id.*

However, California law permits a plaintiff to prove a design defect through circumstantial evidence, "even when the accident itself precludes identification of the specific defect at fault."  *Hinckley v. La Mesa R.V. Center, Inc.*, 158 Cal. App.

3d 630, 642 (1984). Unlike in *Triton*, where the plaintiff alleged a defect in a particular circuit breaker that had been destroyed, Michery alleges a defect in the design of all 1999 Ford Expeditions. That Michery's particular Expedition has been destroyed therefore does not necessarily prevent him from establishing a genuine issue of material fact as to a design defect. Moreover, Michery's expert, Dr. Khadilkar, relies upon a much greater quantum and quality of evidence than the experts in *Triton*. He reviewed numerous photographs of the accident, the CHP report, medical records, witness statements and testimony, the crash test video showing a Ford F-150, and National Highway Traffic Safety Administration crash tests involving 1999 Ford Expeditions. Although the actual Ford Expedition was destroyed before it could be inspected, the remaining evidence does not consist solely of speculative expert opinion. Dr. Khadilkar's declaration may be considered on remand.

In sum, we hold that there are genuine issues of material fact as to Michery's defective design defect claim under the risk/benefit test. We vacate summary judgment and remand to the district court for further proceedings. We express no opinion as to the merits of Michery's claims.

Costs awarded to Plaintiff-Appellant.

**VACATED and REMANDED.**

8

No. 13-57012*, Michery v. Ford Motor Co.*

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly held that the consumer expectations test did not apply to Michery's design defect claim. I also agree that the district court properly held that the risk/benefit test did apply. I do not agree, however, that Michery presented evidence sufficient to raise a genuine dispute of material fact under the risk/benefit test. I respectfully dissent as to that element of the disposition and would affirm the summary judgment entered by the district court.

Michery's claim cannot survive summary judgment unless he can point to enough evidence for a jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

Much of the evidence Michery presented before the district court simply did not demonstrate the circumstances he sought to prove, which was that the Expedition's driver's-side floor space and side rails collapsed inward in the accident and led to his injuries. The witness testimony described only the conditions leading to the accident and the accident itself, and the hospital records noted that Michery fractured his left leg in two places, but did not provide information as to how. While the collision report noted that there had been major

damage to the front left side of the car and "[d]river side floorboard intrusion," it provided few specifics. Only three photographs were taken of the car's interior at the crash site, and the floor was covered by a mat in the only photograph taken at an angle that could potentially have revealed damage to the floorboard.

Dr. Khadilkar's testimony was not sufficient to save Michery's case. While I agree with the majority that the district court erred when it declined to consider Dr. Khadilkar's declaration altogether, his conclusions were only as valid as the underlying evidence, none of which was significantly probative. For instance, Dr. Khadilkar's descriptions of the damage to the Expedition were purportedly based on the accident scene photographs, but those photographs did not always reflect his description. For example, he described a "rearward inward push at the floor board coming through the toe board" of the damaged Expedition, but the floorboard was obscured by a mat in the only photograph available. The only crash test Dr. Khadilkar reported relying on involved a different vehicle (a Ford F-150 pickup truck instead of an Expedition SUV), in a different type of crash (head-on instead of angled), moving at a different speed. Although he alluded to having considered four crash tests conducted on 1999 Ford Expedition vehicles like the one Michery was driving, he did not suggest that those crash tests had influenced his analysis and did not explain their relevance.

2

A lack of reasoning pervaded Dr. Khadilkar's conclusions. In effect, his declaration amounted to nothing more than an assertion that he was an expert and a proclaimed conclusion that the damage was "excessive" and that the risk of the design outweighed the benefits, without further explanation. The vehicle in question was from model year 1999, and there were likely thousands of that model sold. Dr. Khadilkar had reason for not being able to inspect the specific vehicle involved in the crash, but, save his cursory reference to the existence of crash tests, he did not refer to any inspection by him or by anyone else of any other 1999 Expedition, either. Nor did he identify any other accidents or incidents involving that model vehicle, even though it had been available and on the market for more than a decade. More should have been required to provide credible proof upon which a reasonable jury could rely to support a conclusion that the design of the 1999 Expedition was defective under the risk/benefit test.

Because it is clear to me that Michery did not provide enough evidence for a jury to return a verdict in his favor, I would affirm the district court's grant of summary judgment.